IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TALLI McFADDEN,** | : | |
| Petitioner | : | |
| | : | No. 1:21-cv-01477 |
| v. | : | |
| | : | (Judge Kane) |
| **HERMAN QUAY,** | : | |
| Respondent | : | |

**MEMORANDUM**

On August 27, 2021, pro se Petitioner Talli McFadden ("Petitioner"), who is presently incarcerated at the United States Penitentiary Allenwood ("USP Allenwood") in White Deer, Pennsylvania, initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1) and a memorandum of law (Doc. No. 2) and exhibits (Doc. No. 3) in support thereof.  Petitioner seeks an Order directing the Bureau of Prisons ("BOP") to apply prior custody credit and recalculate his current sentence.[1]  Petitioner paid the requisite filing fee on August 30, 2021.  (Doc. No. 7.)  Following an Order to show cause (Doc. No. 8), Respondent filed his response on September 20, 2021 (Doc. No. 11.)  Petitioner filed his traverse on October 4, 2021.  (Doc. No. 12.)  Petitioner's § 2241 petition is, therefore, ripe for disposition.

---

[1] Petitioner seeks various amounts of prior custody credit in his filings.  In his § 2241 petition, Petitioner asserts that he is owed "close to 67 months of credit" and that a recalculation of his sentence "would reduce his current sentence to an approximate release date for January 2023." (Doc. No. 1 at 8.)  In his memorandum of law, however, Petitioner asserts that he is entitled to approximately 86 months of credit.  (Doc. No. 2 at 11-12.)  He also requests either immediate release to a halfway house or immediate release "to time served and 8 years supervised supervision."  (Id. at 12.)

I.  BACKGROUND

   A.  Petitioner's Convictions and Sentences

On December 12, 2000, the United States District Court for the Eastern District of Pennsylvania sentenced Petitioner to 180 months' imprisonment, followed by five (5) years of supervised release, for several drug-related convictions. (Doc. No. 11-1 at 13-14.) On July 13, 2004, the Eastern District of Pennsylvania issued an amended judgment, reducing Petitioner's sentence to 55 months' incarceration. (Id. at 4.) This reduction "resulted in a March 27, 2004 release date, causing [Petitioner's] immediate release from custody on July 14, 2004." (Id.) Petitioner served 110 days beyond his statutory release date. (Id. at 19.)

On March 20, 2011, Petitioner was charged by state authorities in Philadelphia with several violent and firearms-related offenses, including attempted murder. (Id. at 23.) On April 4, 2011, the Eastern District of Pennsylvania issued a warrant for Petitioner's arrest so that he could appear for revocation of supervised release proceedings. (Id. at 21-25.) Federal authorities arrested Petitioner on June 22, 2011, and he was detained pending disposition of the alleged supervised release violations. (Id. at 4, 27-30.) On January 18, 2013, the Eastern District of Pennsylvania revoked Petitioner's supervised release and imposed a "term of time served followed by six (6) months of supervised release." (Id. at 32.) Petitioner was released from custody that same day. (Id. at 4, 32.)

On August 12, 2015, the Eastern District of Pennsylvania issued a warrant for Petitioner's arrest pursuant to an indictment charging him with various drug-related offenses, as well as money laundering. (Id. at 34.) The Federal Bureau of Investigation arrested Petitioner pursuant to this warrant on October 21, 2015. (Id.) He was detained pending disposition of the charges. (Id. at 4.) Petitioner pled guilty to three (3) drug-related offenses and one (1) money

2

laundering conspiracy charge as set forth in a superseding indictment. (Id. at 36.) On October 21, 2020, the Eastern District of Pennsylvania sentenced Petitioner to 210 months' imprisonment, to be followed by eight (8) years of supervised release. (Id. at 37-38.)

The BOP calculated Petitioner's sentence as commencing on October 21, 2020, the date on which it was imposed, and awarded him prior custody credit from October 21, 2015, the date of his arrest, through October 20, 2020. (Id. at 9.) Petitioner's "210-month term earns a total of 944 days of Good Conduct Time (GCT) credit, as provided by 18 U.S.C. § 3624(b)." (Id. at 5.) However, in 2015, twenty-seven (27) days of GCT were disallowed. (Id. at 41.) Accordingly, Petitioner is eligible to receive a total of 917 days of GCT. (Id.) Petitioner's projected release date, with GCT applied, is October 15, 2030. (Id. at 9.)

### B.     Petitioner's Administrative Remedies

On January 26, 2021, Petitioner submitted an informal resolution form alleging that his federal sentence has been incorrectly calculated. (Id. at 67-68.) Specifically, Petitioner sought credit for June 22, 2011 through January 18, 2013, as well as the 110 overserved days from his first federal sentence. (Id. at 68.) On February 23, 2021, his information resolution was denied. (Id. at 69.) Petitioner was informed that the jail credit in question was applied to his revocation sentence of January 18, 2013, and that the "overserved credit would only apply to a revocation sentence" for his previous case. (Id.)

On March 3, 2021, Petitioner submitted administrative remedy 1071255. (Id. at 43, 54.) That submission was rejected "for not being legible and failing to include the proper number of continuation pages." (Id. at 43.) Petitioner resubmitted the administrative remedy on March 11, 2021. (Id. at 54, 65.) On March 23, 2021, Respondent denied his administrative remedy. (Id. at 63-64.) On March 30, 2021, Petitioner appealed to the Regional Director by submitting

administrative remedy 1071255-R1.  (Id. at 55, 62.)  On May 28, 2021, the Regional Director responded, notifying Plaintiff that his request had been forwarded to the Designation and Sentence Computation Center for a final determination.  (Id. at 61.)  The Regional Director told Plaintiff that he "must follow up with your Unit Team or continue the Administrative Remedy process in order to be advised of this determination."  (Id.)

On June 22, 2021, Petitioner appealed to the Central Office by submitting administrative remedy 1071255-A1.  (Id. at 55, 60.)  On July 20, 2201, the Central Office rejected Petitioner's appeal for failing to include a copy of the Regional Director's response.  (Id. at 59.)  Petitioner resubmitted the appeal on August 11, 2021.  (Id. at 58.)  The appeal is currently pending before the Central Office, and a response is due on or before October 10, 2021.  (Id. at 43, 56.)

## II.     DISCUSSION

Respondent asserts that Petitioner's § 2241 petition should be denied because: (1) Petitioner failed to exhaust his administrative remedies; and (2) the BOP correctly calculated Petitioner's sentence.  (Doc. No. 11 at 5.)  The Court considers each argument in turn.

### A.     Exhaustion of Administrative Remedies

While § 2241 does not contain an explicit statutory exhaustion requirement, the United States Court of Appeals for the Third Circuit has consistently required a petitioner to exhaust his administrative remedies before filing a § 2241 petition.  See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996).  Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy."  See id. at 761-62 (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981)).  Thus, "a

federal prisoner who . . . fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice." See id. at 762. Exhaustion, however, is not required when it would not promote these goals, such as when exhaustion would be futile. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998).

The BOP has a multi-step administrative remedy program allowing an inmate "to seek formal review of an issue relating to any aspect of his/her own confinement." See 28 C.F.R. § 542.10(a). First, an inmate should attempt inform resolution of the issue with the appropriate staff member. See id. § 542.13(b). If informal resolution is unsuccessful, the inmate may submit a formal written grievance, using the BP-9 form, to the Warden within twenty (20) calendar days "following the date on which the basis for the Request occurred." See id. § 542.14(a). The Warden is to respond to the request within twenty (20) calendar days. See id. § 542.18. An inmate dissatisfied with the Warden's response may appeal, using the BP-10 form, "to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." See id. § 542.15(a). Finally, an inmate may appeal the Regional Director's response, using the BP-11 form, to the BOP's General Counsel "within 30 calendar days of the date the Regional Director signed the response." See id. The General Counsel's response is due within forty (40) calendar days; however, the time period for response may be extended by twenty (20) days. See id. § 542.18.

As noted supra, Petitioner resubmitted his appeal to the Central Office on August 11, 2021, and the response thereto is due on or before October 10, 2021. (Doc. No. 11-1 at 43, 56, 58.) Petitioner filed his § 2241 on August 27, 2021, shortly after resubmitting his appeal to the Central Office. Petitioner asserts that the BOP did not follow their own administrative remedy

5

procedures. (Doc. Nos. 3-17 at 1; 12 at 2-4.) Specifically, Petitioner maintains that the Regional Office failed to respond to his BP-10 within the time allotted for such a response. (Doc. No. 12 at 2.) Petitioner is correct that an inmate "may consider the absence of a response to be a denial if he "does not receive a response within the time allotted for reply, including extension." See 28 C.F.R. § 542.18. In the instant case, however, the lack of a response from the Regional Office allowed Petitioner to proceed to the Central Office by filing a BP-11. Petitioner, however, did not wait for the Central Office's time to respond to expire before filing his § 2241 petition. Thus, the Court agrees with Respondent that Petitioner's § 2241 petition is subject to dismissal for failure to fully exhaust his administrative remedies prior to initiating the above-captioned action. Nevertheless, the Court will address the merits of his petition below.

      B.     **Computation of Petitioner's Sentence**

The Attorney General is responsible for computing federal sentences for all federal offenses committed after November 1, 1987. See 18 U.S.C. § 3585; United States v. Wilson, 503 U.S. 329, 331-32 (1992). The Attorney General has delegated this authority to the Director of the BOP. See 28 C.F.R. § 0.96. The process of computing a federal sentence is governed by 18 U.S.C. § 3585 and consists of two steps: (1) a determination of the date on which the federal sentence commences, and (2) consideration of any credit to which the inmate may be entitled. See Williams v. Zickefoose, 504 F. App'x 105, 107 (3d Cir. 2012) (citing 18 U.S.C. § 3585).

Section 3585(a) provides that a federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." See 18 U.S.C. § 3585(a). As noted supra, Petitioner's current federal sentence commenced on October 21, 2020, the date on which it was imposed. (Doc. No. 11-1 at 9.) Petitioner does not contest that

this is the date on which his federal sentence commenced. Rather, Petitioner seeks prior custody credit for various periods of time prior to that date. (Doc. No. 2.)

18 U.S.C. § 3585(b) specifies that:

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

See 18 U.S.C. § 3585(b). Thus, "[s]ection 3585(b) prohibits the BOP from crediting a federal sentence with time that has already been credited toward another sentence." See Pickett v. Warden McKean FCI, 726 F. App'x 104, 106 (3d Cir. 2018) (citing Wilson, 503 U.S. at 337). "Congress made clear that a defendant could not receive a double credit for his detention time." See Wilson, 503 U.S. at 337.

Petitioner first requests that all of the time he spent incarcerated on a voluntary manslaughter conviction be credited toward his federal sentence. (Doc. No. 2 at 4, 14.) He asserts that he was arrested in 1994 and pled guilty after being "locked up for three years on the case." (Id.) Petitioner asserts that he "served 64 months for a crime he was not guilty" of, but also refers to serving "10 years for a wrongful coerced plea by two dirty officers." (Id.) He alleges that the two Philadelphia detectives who investigated his case, Emanuel Santiago and Frank Jastrezembski, framed individuals by threatening witnesses in order to obtain false testimony.[2] (Id. at 14.) As an initial matter, to the extent that Petitioner seeks to challenge this

---

[2] Petitioner's exhibits indicate that these detectives, as well as others that served with the Philadelphia Police Department, have been sued by Anthony Wright, an individual who spent 25

conviction, he must do so pursuant to 28 U.S.C. § 2254.  See Washington v. Sobina, 509 F.3d 613, 618 n.5 (3d Cir. 2007) (noting that "a state prisoner challenging the validity or execution of his state court sentence must rely on the more specific provisions of § 2254 rather than § 2241"). Moreover, the Court cannot direct the BOP to provide Petitioner credit for this time, as such time has already been credited toward Petitioner's state conviction.³  See Wilson, 503 U.S. at 337; Pickett, 726 F. App'x at 106.

Petitioner also seeks prior custody credit for the 19 months he was in federal custody for violating his period of supervised release imposed as part of his prior federal sentence.  (Doc. No. 7-8.)  He also asserts that the 110 days he overserved following his release from custody pursuant to his sentence reduction in 2004 should be credited toward his current sentence.  (Id. at 12.)  As noted supra, Petitioner was sentenced to time served for the supervised release violation.  However, "a sentence imposed for 'time-served' means that all time spent in official detention as a result of the offense for which the sentence was imposed[] is included in the 'time-served sentence which the court imposed and cannot be awarded to any other sentence."  (Doc. No. 11-1 at 4.)  Thus, Petitioner's time in custody from June 22, 2011 through January 18, 2013, as well as the "110 days previously over-served in 2004, [were] incorporated into the time-

---

years wrongfully incarcerated "for the October 18, 1991 rape and murder of seventy-seven year old Louise Talley in her home in North Philadelphia" before DNA testing conclusively excluded him as a suspect.  (Doc. No. 3-13 at 2.)  The complaint alleges that the detectives used threats and violence to coerce Mr. Wright to sign a false statement regarding the incident.  (Id. at 3.)

³ In his traverse, Petitioner suggests he is entitled to credit for time spent in custody in Philadelphia County "fighting local charges" from December 20, 2006 until July 25, 2007. (Doc. No. 12 at 5.)  Petitioner notes that he was acquitted of these charges, but that the Pennsylvania Board of Parole and Probation disregarded these acquittals and sentenced him to 18 months' incarceration for parole violations.  (Id.)  Petitioner himself notes, however, that this period of time was credited to his state sentence.  (Id.)  The Court, therefore, cannot direct the BOP to provide double credit for such time.  See Wilson, 503 U.S. at 337; Pickett, 726 F. App'x at 106.

served sentence." (Id.) Because this time has already been credited toward another sentence, Petitioner is not entitled to have it credited toward his current federal sentence. See Wilson, 503 U.S. at 337; Pickett, 726 F. App'x at 106.

Petitioner also suggests that he is entitled to credit for time spent in a halfway house between July 20, 1999 to February 1, 2000 and March 6, 2006 until September 2006, as well as a period of house arrest from November 3, 2010 until March 3, 2011. (Doc. No. 2 at 6.) The record reflects that the latter two periods of time fell within Petitioner's period of supervised release imposed as part of his prior federal sentence. (Doc. No. 3-5 at 6-8.) In his traverse, Petitioner alleges that he is entitled to credit for time spent on bail from July 27, 2009 until September 22, 2009, during which he was reporting to a federal "supervised release officer." (Doc. No. 12 at 6.) The Supreme Court, however, has held that "credit for time spent in 'official detention' under § 3582(b) is available only to those defendants who were detained in a 'penal or correctional facility.'" See Reno v. Koray, 515 U.S. 50, 58 (1995). Petitioner, therefore, is not entitled to credit toward his current sentence for these periods of time. See Brown v. Warden Fort Dix FCI, 789 F. App'x 291, 291-92 (3d Cir. 2020) (following Koray and concluding that time spent confined at home as a condition of bail did not qualify as official detention pursuant to § 3585(b)); Rodriguez v. Lamer, 60 F.3d 745, 747-48 (11th Cir. 1995) (following Koray and concluding that time spent under house arrest did not qualify as "official detention" pursuant to § 3585(b)); United States v. Woods, 888 F.2d 653 (10th Cir. 1989) (concluding that an inmate is not entitled to prior custody credit for time spent in a halfway house). In sum, Petitioner has been awarded all the prior custody credit to which he is entitled. Accordingly, the Court cannot grant the relief he seeks in his § 2241 petition.

### III. CONCLUSION

Based on the foregoing, the Court will deny Petitioner's § 2241 petition.  (Doc. No. 1.) An appropriate Order follows.